ALBERT THERRIAULT, pro ami, *vs.* WILLIAM BRETON, et al.

ERNEST DRAPEAU, pro ami, *vs.* WILLIAM BRETON, et als.

Androscoggin.    Opinion November 17, 1915.

*Arrested.    Complaint.    Discharged.    Exceptions.    False Imprisonment.
Guardians.    Minors.    Police Officers.    Waiver.*

In an action for false imprisonment of two minors who were discharged
without taking them before the court, upon signing a release to the
officers, with the knowledge and consent of the parents,

*Held:*

1. The parent is the legal custodian of the minor children and is entitled
to their custody.
2. So far as the boys are concerned, if they or their parents solicited
their release, and it was done with their full knowledge and consent,
then the officers can justify.
3. Unless the officers either take the boys into court to be discharged
there, if necessary, or have let the boys go at their own request or the
request of their parents, with their knowledge and consent, then they
cannot justify, but are liable in such case for the original arrest.
4. If the officers had arrested the plaintiffs for a misdemeanor, then it
would have been their duty to have procured a warrant within a reason-
able time for the alleged offense and take them before the court and
place them on trial, and for neglect to do so would have been liable in
damages, unless the plaintiffs released them from that obligation or
they waived their rights to be taken before the court.
5. The law is well settled that an officer may arrest upon reasonable
grounds of suspicion that a felony has been committed and that the
person arrested was guilty of a felony, and hold the party arrested for
a reasonable time until he can procure a warrant to investigate the case,
and if within a reasonable time his investigation shows that there is not
reasonable grounds to believe that the party arrested has committed a
felony, then he may discharge him without taking him before the court
and not be liable.

On exceptions by plaintiff.    Exceptions overruled.

These are actions of trespass for false imprisonment against the
defendants, police officers of the city of Lewiston, and Frank

Martin, Jr., who made the complaint. The plaintiffs, being minors, at the solicitation of their parents and with their knowledge and consent, signed a release to said defendants. Plea, the general issue with brief statements. The verdicts were for plaintiffs in both cases for nominal amounts. The plaintiffs excepted to the admission of the release, and to certain instructions by the court.

The case is stated in the opinion.

*J. G. Chabot,* for plaintiffs.

*McGillicuddy & Morey,* for defendants.

SITTING: SPEAR, KING, BIRD, HALEY, HANSON, JJ.

HALEY, J. Two actions for false imprisonment of the minor plaintiffs against two police officers of the city of Lewiston, and Frank Martin, Jr., who made a complaint to the other defendants, as police officers of the city of Lewiston, that the plaintiffs had stolen a pig from his pen, whereupon the plaintiffs were arrested in the night time by the defendant officers, and the next forenoon the complainant, claiming that his pig had been put back in the pen, refused to sign a complaint for a warrant, and the parents of the boys being present at the marshal's office, the plaintiffs were discharged after signing the paper introduced in evidence at the trial. The cases were tried together and the jury returned a verdict for the plaintiff in both cases and assessed nominal damages. The plaintiffs bring the cases to this court upon exceptions.

The first exception relates to the discharge of the plaintiffs by the defendants without bringing them before the court, at their request and with the consent and knowledge of their parents, as claimed by defendants. This exception is urged by the plaintiffs in their brief as follows: "If these boys, plaintiffs, were for any cause wrongfully arrested by the defendants, a right of action accrued in their favor against the party making or causing the arrest to be made. A right of action is a property right. The parents of the minors, as natural guardians, had no authority or legal right to discharge, waive or release any property right of their wards. The boys being minors could not legally discharge, waive or execute and give any valid release, binding against themselves."

The claim of the plaintiffs is undoubtedly the law, and the court so ruled, stating, "Well, they may show all the circumstances of the release. If the release was with the consent of the boys or their natural guardians it was effective, so far as that part of it goes. Of course that would not excuse any unlawful arrest in the first place." In the charge the jury were instructed: "In the first place, the boys were minors, and their releases would not be good for anything, anyway. They would not be barred by them. In the next place, the parents had no right to release a property right of a minor child. If it becomes necessary in a case that a property right, like a right of action at law, should be released, the probate court should be applied to and a guardian appointed. The guardians would have full power; but the parents are only the natural guardians and have the custody of the person, education and maintenance of the child. But in property matters, they can no more release a cause of action than they can convey a farm that happens to stand in the child's name. So that as barring the action as a settlement the releases are not to be considered."

The plaintiffs having testified as to what took place at the time of their release, it was proper for the defendants, as stated by the court, to "show all the circumstances of the release," and the plaintiffs could not, by their version of what took place, prevent their testimony being given as to the release. The court having ruled upon the admissibility of the evidence, and instructed the jury as the plaintiffs claimed the law, there is no merit in this exception.

The second exception was to the admission of the signed releases offered by the defendants and signed, in the Terriault case by the plaintiff's father only, and in the Drapeau case by the plaintiff and his mother, which it is claimed released and discharged the officers from all right of action for the injuries suffered and sustained by reason of the arrests. They were not admitted as barring the plaintiffs' claims for injuries prior to their release, but as bearing upon the question whether the plaintiffs were allowed their liberty with their request or consent? The court instructed the jury: "Now, so far as the releases are concerned, I have this to say. I have admitted them in evidence against objection. They are objectionable in some features, that is to say, they cannot be weighed for

all that appears upon them. But for one purpose they are admissible, and that is as evidence that the release of the boys was voluntary, that is, the letting go by the officers of the boys was voluntary and consented to, or on request. In the first place the papers themselves contained the expression that it was done at their request; and the officers say that the purport of the papers was communicated to the father and mother and perhaps in the presence of the boys, before the signatures. The father and mother denied it. But in any event, so far as these papers were understood by the parties that signed them, so far as they can be weighed as bearing upon the question whether the boys were let go at the request of their parents, or with the knowledge and consent of their parents that they should go under those circumstances, and not be brought into court."

The court having ruled that if the arrests were unlawful, the property rights of the plaintiffs were not affected by the releases, if the jury found that the arrests in the first instance were lawful, then there was the other branch of the case whether the giving of the boys their liberty was with their consent, and for that purpose of course the releases were admissible for what the jury might find them worth under the instructions of the court. But there is a fatal objection to the exception. The releases are not printed in the record, and we have no knowledge of their contents except that one was signed by one of the plaintiffs and his mother, and the other by the father of the other plaintiff. We have no right to rule upon the admissibility of evidence that is not printed in the record, or the substance of it given so that we can intelligently pass upon its admissibility. The court cannot consider an exception to the admission or exclusion of a writing unless the writing is made a part of the bill of exceptions. Of course formal parts of deeds, executions and duplicates, writings, etc., need not be printed. An admission by counsel in the bill of exceptions, as stated in *Dyer* v. *Tilton*, 71 Maine, 413, 414, will preserve the rights of the parties, but this court cannot, by a mere reference to a paper as a deed, bond, release, or any other writing by it's common name, pass upon its admissibility. As said in *Webster* v. *Folsom*, 58 Maine, 233, "Whatever a party expects to have considered as part of the case, must be copied. We have nothing before us to show

what the testimony deemed objectionable was. The presumption is that the rulings were correct. It is for the excepting party to show it if they were not so. Counsel cannot present in this court an objection to the admissibility of testimony by a naked reference to papers remaining on file in the court below." We cannot rule, without an inspection of the releases, whether they were admissible or not. They are not in the record and therefore this exception is without merit.

The third and last exception was to an instruction to the jury as to the effect of a release from arrest of the plaintiffs without taking them before the court, as contained in the following extract from the Judge's charge: "And that brings up the second part of this case which has been tried here, whether these boys were let go by the officers under such circumstances as to justify them. They would be so far as the plaintiffs were concerned, the boys, they would be justified in letting them go if the boys asked it, or their parents asked it. Because the parent is the legal custodian of the boy, and is entitled to his custody. Whether they were doing their duty to the State would be another proposition. But so far as the boys are concerned, if the boys or their parents solicited their release, and it was done with their full knowledge and consent, irrespective of the releases which were made and which have been introduced in the case, then the officers can justify. But unless they have either taken the boys into court to be discharged there, if necessary, or have let the boys go at their own request, or the request of their parents, with their knowledge and consent, then they cannot justify, but are liable in such case for the original arrest."

The plaintiffs contend that it was the duty of the officers, having arrested the plaintiffs, to take them before the court within a reasonable time, and that, as they were not taken before the court, and no warrant procured against them for the offense for which they were arrested, the officers are liable for the arrests. This proposition is not sound. If the officers had arrested the plaintiffs for a misdemeanor, then it would have been their duty to have procured a warrant within a reasonable time for the alleged offense and taken them before the court and placed them on trial, and for a neglect to so do unless the plaintiffs released them from that

obligation, or they waived their rights to be taken before the court, the defendants would be liable in damages. But the offense for which the plaintiffs were arrested was a felony, and the law is well settled that an officer may arrest upon reasonable grounds of suspicion that a felony has been committed and that the person arrested was guilty of the felony, and hold the party arrested for a reasonable time until he can procure a warrant to investigate the case, and if, within a reasonble time before he does procure the warrant, his suspicions vanish, or, in other words, if his investigation shows that there is not reasonable grounds to believe that the party arrested has committed a felony, then he may discharge him without taking him before the court, and not be liable. The authorities sustaining this proposition are too numerous to mention. *Burke* v. *Bell,* 36 Maine, 317; *Palmer* v. *Maine Central R. R. Co.,* 92 Maine, 399. And even if it was the duty of the defendants to procure warrants and have the plaintiffs taken before the court, the defendants could waive the performance of that duty, for, as said in *Coffrey* v. *Drugan,* 114 Mass., 294, "If a party is ready to waive this provision made for his protection, and release any damages to which he might be entitled if the duty of the officer in this respect is not performed, there is no reason, as between himself and the officer, why he should not be permitted to do so. It is obvious that, in many instances, persons arrested thus save themselves from a painful and disagreeable exposure of acts which may even if disorderly and turbulent, were rather those of weakness and folly than of serious criminality. We therefore are of opinion, that, if the plaintiff requested or consented to his discharge, intending thereby to release any damages on account of a failure to make a complaint, and such agreement was fairly and intelligently made, he is not entitled to damages on account of such failure; and that he jury should have been so instructed."

In this case, under the instructions of the court, the plaintiffs lost no rights by the officers discharging them without taking them before the court, for, if the arrests were unlawful in the first instance, there was no release of their rights. If it was lawful, up to the time they were released there were no damages, and to have continued to hold them in custody, procured a warrant and taken them before the court for a hearing, after the suspicion of

the officers that they were guilty had vanished, would have rendered the officers liable for all their acts after their suspicions had vanished, and surely the plaintiffs cannot recover damages because the officers did not wrongfully detain them or wrongfully procure warrants and take them before the court. If the arrests were unlawful, the defendants had the right to end the unlawful arrests at any time, and no damages could be recovered for the unlawful arrests after they had ceased; the damages would be limited to the injuries sustained by the plaintiffs to the time of their release. As the instructions excepted to were more favorable to the plaintiffs than the evidence warranted, they were not injured, and these exceptions must be overruled. The real grievance of the plaintiffs is the amount of damages awarded, but that question is not raised by the exceptions.

*Exceptions overruled.*