Leonard F. DOYLE, pro ami,

v.

Bowdoin COLLEGE, Sidney J. Watson, Charles E. Holt, Jr.

v.

COOPER INTERNATIONAL, INC., Cooper of Canada, Leon Ouimet, Maurice van Lonkhuyzen and Margaret Doyle.

Supreme Judicial Court of Maine.

July 20, 1979.

Monaghan & Leahy by Thomas F. Monaghan (orally), William D. Pinansky, Portland, for plaintiff.

Thompson, Willard & McNaboe by U. Charles Remmel, II (orally), M. Roberts Hunt, Herbert Sawyer, Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Brian Doyle, son of Leonard F. Doyle, was playing floor hockey at a two week summer session hockey clinic, sponsored by Bowdoin College and directed by defendants Sidney Watson and Charles Holt, Jr., when a plastic hockey blade flew off the end of a hockey stick wielded by Leon Ouimet and hit him in the eye, shattering his glasses and damaging his retina so as to leave him partially blind. Leonard F. Doyle, as next friend of his son, instituted this action for tort in the Superior Court

(Cumberland County) against the College and its agents.[1]

The case was tried before a jury which concluded that negligent conduct of defendants Bowdoin College and Charles Holt, Jr. proximately caused Brian's injuries. The jury awarded $50,000 in damages to the plaintiff.

Defendants Holt and Bowdoin College have appealed from the judgment entered on the verdict of the jury. They contend that the presiding Justice committed error by ruling (1) that certain documents executed before Brian was permitted to participate in the hockey clinic, one executed by Brian's father and one by his mother Margaret C. Doyle, were *not* releases relieving defendants of all liability for future injuries Brian might suffer as a result of defendants' negligent conduct; and (2) that the particular document executed by Brian's mother was not a contract of indemnification obligating her to reimburse defendants for any liability they might incur with regard to injuries sustained by Brian as a participant in the summer clinic.

We decide that the rulings of the presiding Justice were correct and deny the appeal.[2]

The documents upon which defendants rest their arguments read as follows:

"I understand that *neither Bowdoin College nor anyone associated with the Hockey Clinic will assume any responsibility for accidents and medical or dental expenses* incurred as a result of participation in this program. . . . I under-

stand that I must furnish proof of health and accident insurance coverage acceptable to the College. . . . [signed] Leonard F. Doyle" (emphasis added).

"I fully understand that *Bowdoin College, its employees or servants will accept no responsibility for* or on account of *any injury or damage sustained by Brian* arising out of the activities of the said THE CLINIC. *I do, therefore, agree to assume all risk of injury or damage* to the person or property of Brian arising out of the activities of the said THE CLINIC. . . . [signed] Margaret C. Doyle" (emphasis added).

We address, first, the question, whether these documents may fairly be held to be "releases." Courts have traditionally disfavored contractual exclusions of negligence liability and have exercised a heightened degree of judicial scrutiny when interpreting contractual language which allegedly exempts a party from liability for his own negligence.

"If an express agreement exempting the defendant from liability for his negligence is to be sustained, it must appear that its terms were brought home to the plaintiff . . . ." Prosser, *Torts* § 68 (4th ed. 1971).

The Supreme Court of Pennsylvania has set forth the applicable legal principles governing construction of such contractual clauses in considerable detail:

"contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the

---

1. Brian's father Leonard F. Doyle originally brought suit, as next friend of his son, against Bowdoin College and its agents, Sidney Watson and Charles Holt, Jr. Defendants instituted third party actions against the manufacturer and the supplier of the plastic hockey blade, Cooper International, Inc. and Cooper of Canada. Defendants also brought third party actions against Leon Ouimet and against Dr. Maurice van Lonkhuyzen, the Doyle family opthamologist who had prescribed the eyeglasses worn by Brian at the time of the accident. Plaintiff then filed cross claims against all third party defendants. All claims against Dr. van Lonkhuyzen, and plaintiff's cross claim against Leon Ouimet, were voluntarily dismissed prior to trial. The jury found that Cooper Interna-

tional, Inc., Cooper of Canada, Leon Ouimet and Sidney Watson were not liable for Brian's injuries.

2. Because we do not construe the documents executed by Brian's parents as releases or indemnification agreements, we have no occasion to reach the further issue whether contractual provisions which relieve a party from liability for that party's own negligence would be unenforceable and void as contravening public policy. *See, e. g., Tunkl v. Regents of University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963); Prosser, *Torts* § 68 (4th ed. 1971).

law . . . such contracts 'must spell out the intention of the parties with the greatest of particularity' . . . and show the intent to release from liability 'beyond doubt by express stipulation' and '[n]o inference from words of general import can establish it' . . . such contracts must be construed with every intendment against the party who seeks the immunity from liability . . . the burden to establish immunity from liability is upon the party who asserts such immunity." *Employers Liability Assurance Corp. v. Greenville Business Men's Association,* 423 Pa. 288, 224 A.2d 620, 623 (1966).

*See also Lincoln Pulp & Paper Co., Inc. v. Dravo Corporation,* 436 F.Supp. 262 (D.C. Me.1977); *Jones v. Walt Disney World, Co.,* 409 F.Supp. 526 (W.D.N.Y.1976); *Fedor v. Mauwehu Council, Boy Scouts of America,* 21 Conn.Sup. 38, 143 A.2d 466 (1958); *Phoenix Assurance Co. of New York v. Royale Investment Co.,* 393 S.W.2d 43 (Mo.App. 1965); 15 Williston, *Contracts* § 1750A (3d ed. 1972); Annot., Limiting Liability for Own Negligence, 175 A.L.R. 8 (1948).

The documents executed by Leonard and Margaret Doyle contain no express reference to defendants' liability for their own negligence. Though the documents state that Bowdoin College will not "assume" or "accept" any "responsibility" for injuries sustained by Brian, such language merely indicates an unwillingness to shoulder any additional obligation which the College would not otherwise bear. This is the reasonable interpretation of the language since it would be an inappropriate use of words for Bowdoin College to be intending to refer to its responsibility for injuries caused by its own *negligent conduct* as a liability that is not "assumed" or "accepted." Whether "assumed" or "accepted", or not, Bowdoin College has such responsibility in any event because the *law* had imposed it.

Leonard Doyle's executed statement refers to medical and dental expenses and states that proof of insurance coverage must be furnished to the College. This lends support to the conclusion of the presiding Justice that this document simply notified parents that the College declines to be an insurer, and that if participants in the summer clinic were injured without any negligence on the part of the College or its agents, the College would not provide medical care for the injured participant. Similarly, the word "accidents" in the document signed by the father is reasonably open to the interpretation that it referred only to injuries caused by events which were not the fault of anyone.

The text of the executed documents falls far short of the requirement that releases absolving a defendant of liability for his own negligence must expressly spell out "with the greatest particularity" the intention of the parties contractually to extinguish negligence liability. We conclude that the presiding Justice was correct in ruling that the agreements signed by Leonard and Margaret Doyle were not releases of liability.[3]

The same general rules we have discussed in regard to the interpretation of "releases" of negligence liability apply in the determination of the second issue on appeal, whether the document signed by Brian's mother was an agreement to indemnify Bowdoin College, its employees or servants for injury or damages caused by their negligence. The Supreme Court of the United States recently approved the rule adhered to by a large majority of jurisdictions that

"a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties. . . . [T]he mutual intention of the parties to this effect should appear with clarity from the face of the

---

**3.** Even if we were to assume, *arguendo,* that the documents were releases, the result in this case would remain unchanged. This Court has held that a parent, or guardian, cannot release the child's or ward's cause of action. *Stock-*

*man v. South Portland,* 147 Me. 376, 383, 87 A.2d 679 (1952); *Therriault v. Breton,* 114 Me. 137, 138, 95 A. 699 (1915). *See also Fedor v. Mauwehu Council Boy Scouts of America,* 21 Conn.Sup. 38, 143 A.2d 466 (1958).

contract." *United States v. Seckinger,* 397 U.S. 203, 211–12, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970).

"The majority view is that such indemnity agreements should not be extended to indemnify the indemnitee's own negligence unless the language is clear and unambiguous." *Brogdon v. Southern Railway Co.,* 384 F.2d 220, 223 (6th Cir. 1967).

*See also Freed v. Great Atlantic & Pacific Tea Co.,* 401 F.2d 266 (6th Cir. 1968); *General Accident Fire & Life Assurance Corp. Ltd. v. Finegan & Burgess, Inc.,* 351 F.2d 168 (6th Cir. 1965); *George H. Dingledy Lumber Co. v. Erie R. Co.,* 102 Ohio St. 236, 131 N.E. 723 (1921); *Kroger Co. v. Giem,* 215 Tenn. 459, 387 S.W.2d 620 (1964); *City of Beaumont v. Graham,* 441 S.W.2d 829 (Tex.1969); *Young v. Anaconda American Brass Co.,* 43 Wis.2d 36, 168 N.W.2d 112 (1969).

█ Here, the document executed by Margaret Doyle states that she agrees "to assume all risk of injury or damage to the person or property" of her son Brian. Terms such as "indemnify", "reimburse" or "hold harmless" are absent. Furthermore, the document makes no express reference to injuries proximately caused by the negligent conduct of Bowdoin College or its agents. In accordance with the generally prevailing judicial attitude which looks with disfavor upon contractual provisions purporting to require indemnification of a party for damage or injury caused by that party's own negligence, we agree with the presiding Justice that the document executed by Margaret Doyle was not an agreement of indemnity.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and DELAHANTY, J., did not sit.