STATE OF MAINE                                          SUPERIOR COURT
HANCOCK, SS.                                            CIVIL ACTION
                                                       Docket No. 01-CV-039

DONALD L. GARBRECHT
LAW LIBRARY

SEP 18 2002

C. GARY LLOYD
            Plaintiff

            v.                          ORDER

TOM BOURASSA,
SUGARLOAF MOUNTAIN CORP.,
      and
UNITED STATES CYCLING, INC.
d/b/a NATIONAL OFF-ROAD BICYCLE ASSOCIATION,
            Defendants

## PROCEDURAL HISTORY

On June 22, 1995, C. Gary Lloyd applied for membership in "USCF · NORBA ·

NCCA." After filling in some identifying information on the first page of the application

form, Lloyd placed his signature on the second page, under a section entitled

"Acknowledgment of Risk and Release of Liability." That section contained the

following language:

>   Please accept this as my application for membership and a USCF,
>   NORBA and /or NCCA license.
>
>   I acknowledge that cycling is an inherently dangerous sport in
>   which I participate at my own risk and that the United States Cycling
>   Federation, Inc. is a non-profit corporation formed to advance the sport of
>   cycling, the efforts of which directly benefit me. In consideration of the
>   agreement of the USCF to issue a license to me, hereby on behalf of
>   myself, my heirs, assigns and personal representatives, I release and
>   forever discharge the USCF, its employees, agents, members, sponsors,
>   promoters and affiliates from any and all liability, claim, loss, cost or
>   expense, and waive and promise not to sue on any such claims against
>   any such person or organization, arising directly or indirectly from or
>   attributable in any legal way to any negligence, action or omission to act
>   of any such person or organization in connection with sponsorship,
>   organization or execution of any bicycle racing or sporting event,
>   including travel to and from such event, in which I may participate as a
>   rider, team member or spectator.

On August 11, 1995, with his NORBA membership in hand, Lloyd traveled to Kingfield, Maine to participate in a mountain biking event sponsored by the Sugarloaf Mountain Corporation known as the Widowmaker Challenge. At Kingfield, Lloyd signed the Official Entry Form, which included the following language under the heading of "Athlete's Entry & Release Form[1]":

> I fully realize the dangers of participating in a bicycle race and fully assume the risks associated with such participation including, by way of example, and not limitations, the following: the dangers of collision with pedestrians, vehicles, other racers and fixed or moving objects; the dangers arising from surface hazards, equipment failure, inadequate safety equipment and weather conditions; and the possibility of serious physical and/or mental trauma or injury associated with athletic cycling competition.

> I hereby waive, release and discharge for myself, my heirs, executors, administrators, legal representatives, assigns, and successors in interest (hereinafter collectively "successors") any and all rights and claims which I have or which may hereafter occur to me against the sponsors of this event, the National Off-Road Bicycle Association, the promoter and any promoting organization(s), property owners, law enforcement agencies, all public entities, and special districts and.... through or by which the events will be held for any and all damages which may be sustained by me directly or indirectly in connection with, or arising out of, my participation in or association with the event, or travel to or return from the event . . . . .

> I agree, for myself and successors, that the above representations are contractually binding, and are not mere recitals, and that should I or my successors assert my claim in contravention of this agreement, I or my successors shall be liable for the expenses incurred (including legal fees) incurred by the other party or parties in defending, unless the other parties are financially adjudged liable on such claim for willful and wanton negligence.

Lloyd registered to participate in both the cross-country race and the downhill challenge. While completing a mandatory practice run on August 11, 1995, Lloyd was involved in a collision with another participant, Tom Bourassa.

---

[1] To avoid confusion, the "release" signed in June shall be referred to as the "Membership Release," and the release signed in August shall be referred to as the "Event Release."

On August 10, 2001, Lloyd filed suit against Bourassa, Sugarloaf Mountain Corporation, and United States Cycling Federation d/b/a National Off-Road Bicycle Association, asserting negligence claims against all three. Soon thereafter, Lloyd learned that he had failed to name the appropriate corporate defendant, and filed a motion to amend the complaint. Over objection, that motion was granted, and U.S.A. Cycling, Inc. replaced United States Cycling Federation d/b/a National Off-Road Bicycle Association.

In their Answers, both Sugarloaf and U.S.A. Cycling responded that Lloyd's claims were barred by the releases quoted above. In addition, both asserted Counterclaims against Lloyd for breaching the terms of the releases. Both demanded Lloyd be held liable for any expenses they incurred in defending his suit.

On January 25, 2002, Lloyd filed a Motion for Judgment on the Pleadings with respect to Defendants' Counterclaims and Affirmative Defenses of Release and Waiver. Sugarloaf Mountain Corporation opposed that motion and filed its own Motion for Summary Judgment on March 11, 2002. U.S.A. Cycling also opposed the plaintiff's motion, and filed its Motion for Summary Judgment on April 11, 2002. All of the motions requested that the court review the language of the releases and determine whether and how it affected the outcome of this suit. A hearing on all three motions was held on July 3, 2002. Any findings included below are based upon the properly submitted affidavits and statements of material fact. Specifically excluded from that category is the affidavit form Attorney Greif.

## DISCUSSION

1. Plaintiff's Motion for Judgment on the Pleadings

The plaintiff argues that he is entitled to judgment on the defendants' counterclaims and on their affirmative defenses of release and waiver because "the

release,[2]" by its terms, does not apply to U.S.A. Cycling, does not apply to the facts of this case, does not protect the defendants from their own negligence, and is unenforceable as contrary to public policy.

In considering a motion for judgment on the pleadings, the court is required to accept all of the responding party's pleadings as true, and draw all reasonable inferences in its favor. Judgment is only appropriate if the responding party can prove no set of facts that would entitle it to relief. The plaintiff has failed to meet that burden.

**Applicability to U.S.A. Cycling**

In support of his first assertion, Lloyd argued that, because the Event Release does not mention U.S.A. Cycling, that defendant is not within the category of potentially released entities. With its response to this motion, U.S.A. Cycling filed an affidavit by Barton Enoch to establish that NORBA, a named sponsor of the Widowmaker, was the off-road division of U.S.A. Cycling, Inc. The clear language of the Entry Release covers sponsors, including U.S.A. Cycling d/b/a NORBA.

As mentioned above, Lloyd applied for membership in the United States Cycling Federation (USCF) and NORBA in June 1995. Soon thereafter, USCF merged into a new corporation, U.S.A. Cycling, Inc, that assumed all of its rights and responsibilities. By signing the Membership Release, Lloyd released U.S.A. Cycling, Inc. from responsibility for any accidents that might occur during his participation in any race events it sponsored.

**Definition of Event**

Lloyd has argued that the strictly construed language of the Event Release does not cover accidents that occur during the training run. In support of this argument, he has cited *Doyle v. Bowdoin College*, 403 A.2d 1206 (Me. 1979.) In that case, the Law Court

---

[2]     Plaintiff did not address the language of the Membership Release in his motion.

said "releases absolving a defendant of liability for his own negligence must expressly spell out 'with the greatest particularity' the intention of the parties contractually to extinguish negligence liability." *Doyle*, at 1208. Contrary to the plaintiff's assertions, the language of the Event Release does precisely that:

> I hereby waive, release and discharge for myself, my heirs, executors, administrators, legal representatives, assigns, and successors in interest (hereinafter collectively "successors") any and all rights and claims which I have or which may hereafter occur to me against the sponsors of this event, the National Off-Road Bicycle Association, the promoter and any promoting organization(s), property owners, law enforcement agencies, all public entities, and special districts and properties . . .. through or by which the events will be held for any and all damages which may be sustained by me *directly or indirectly in connection with, or arising out of, my participation in or association with the event, or travel to or return from the event* . . . . . (emphasis added)

All parties have agreed that the training run was a mandatory part of the event. To interpret the Event Release in such a convoluted fashion that it excludes a mandatory part of the event from the term "event" defies logic and is contrary to the intent of the parties as demonstrated by the plain language of the release. *Hardy v. St. Clair*, 1999 ME 142, 739 A.2d 368.

**Public Policy**

Although releases of liability are "traditionally disfavored," in Maine that disfavor has resulted in strict interpretation rather than prohibition. *Doyle v. Bowdoin College, Id.* The cases cited by plaintiff in support of his contrary argument are from other jurisdictions and do not accurately describe the law in Maine. When asked to consider the issue raised here, both Maine state courts and the First Circuit have consistently enforced the language of releases. *See, e.g., Hardy v. St. Clair*, 1999 ME 142, 739 A.2d 368; *McGuire v. Sunday River Skiway Corp.*, 1994 WL 505035 (D.Me.)(Hornby, J.), *aff'd* 47 F.3d 1156 (1st Cir. 1995). Despite his reference to a "contract of adhesion," Lloyd was not compelled to sign either release. He chose to sign both because he

wanted to participate in an inherently risky sport. He is free to make such choices, but must also accept responsibility for what happens as a result of that choice.

For the reasons stated above, plaintiff's motion for judgment on the pleadings is denied.


## 2. Defendants' Motions for Summary Judgment

The Law Court has addressed motions for summary judgment on many occasions:

> In reviewing a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *(citation omitted)* In testing the propriety of a summary judgment, we accept as true the uncontroverted facts properly appearing in the record. (citation omitted)

*Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844. The issue is not whether there are <u>any</u> disputes of fact, but whether any of the disputes involve a "genuine" issue of "material" fact. *See* Rule 56(c). After reviewing the record provided with these standards in mind, the court must conclude that there are no genuine issues of disputed fact.

Both Lloyd and the defendants agree that Lloyd was required to complete a practice run in order to participate in the Widowmaker Challenge. All of them agree that Lloyd signed both releases before he took that mandatory run, and all agree that he was involved in a collision with another bicyclist during that run. As was discussed above, the practice run and any problems encountered during it are covered by the terms of the releases Lloyd signed. The Membership Release contains express language releasing claims arising from negligence. The Entry Release contains express language describing the types of accidents or dangers covered by the release, including "the

6

dangers of collision with ... other racers." The collision between Lloyd and Bourassa was precisely the type of accident contemplated by the parties and waived by Lloyd in both releases.

Lloyd has failed to refer to any evidence in the record that might support his theory that that the Event Release should be seen as a substitution or novation of the Membership Release. Without such evidence, the court may not presume that the parties intended that one contract be substituted for the other.

Lloyd has asserted that the reference in the Event Release to an exception for "willful and wanton negligence" precludes summary judgment. However, no such tort has yet been recognized in Maine, so no jury could be asked to determine whether the defendants had acted with willful or wanton negligence. That exception is inapplicable in this jurisdiction. In addition, that language refers only to the portion of the Release that discusses the defendants' right to recover expenses, including legal fees. On the record presented, there are no material issues of disputed fact concerning the language of the releases.

U.S.A. Cycling was a sponsor and Sugarloaf was a promoter of the race. As a matter of law, the court finds that the mandatory practice run was included within the language of the Releases, that the releases are clear and unambiguous, and that the accident Lloyd claims falls entirely within the types of harms contemplated by the parties at the time the releases were signed. There is nothing left to be litigated on either plaintiff's Complaint against defendants U.S.A. Cycling and Sugarloaf,[3] or on their Counterclaims against him.

For the reasons stated above, the court finds that the releases signed by Lloyd individually and collectively bar any civil action against either U.S.A. Cycling, d/b/a NORBA or against Sugarloaf for the injuries Lloyd allegedly sustained on August 11,

7

1995. Summary judgment on plaintiff's Complaint is granted to U.S.A. Cycling, d/b/a NORBA and to Sugarloaf. In addition, summary judgment against Lloyd on their Counterclaims is granted to both U.S.A. Cycling, d/b/a NORBA and. Within thirty (30) days, counsel for these defendants shall submit proof of expenses, including attorney fees, incurred in defense of this action.

## ORDER

Plaintiff's motion for judgment on the pleadings is denied. The motions for summary judgment filed by defendants U.S.A. Cycling and Sugarloaf are granted. Judgment is granted to those defendants on Counts II and III of plaintiff's amended complaint.

## DOCKET ENTRY

The Clerk is directed to incorporate this Order in the docket by reference, in accordance with M.R.Civ.P. 79(a).

DATED: *20 August 2002*

_____
Ellen A. Gorman

FILED &
ENTERED

AUG 21 2002

SUPERIOR COURT
HANCOCK COUNTY

8